UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY T. GIBBONS,

      Plaintiff,

v.                                                                              Case No. 1:11-cv-1034
                                                              Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on October 3, 1963 (AR 123).[1] He completed the 11th grade and completed additional job training as a state certified auto mechanic (AR 30, 132). Plaintiff alleged a disability onset date of November 1, 2006 (AR 123). He had previous employment as a transmission mechanic (AR 27). Plaintiff identified his disabling condition as asthma, stents, anxiety and depression (AR 126). Due to these conditions, plaintiff asserted that he has trouble breathing when exerting himself and limited mobility in his right shoulder (AR 126-27). On April 8, 2011, an ALJ reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 12-20). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months.  *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

The ALJ found that plaintiff's claim failed at the fifth step.  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of November 1, 2006 through his last insured date of December 31, 2009 (AR 14).  At step two, the

ALJ found that through the last insured date, plaintiff suffered from the severe impairments of: coronary artery disease with stents placed in 1998 and 2009; status-post percutaneous transluminal coronary angioplasty (PTCA); asthma; and right shoulder impingement (AR 14). At step three, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically Listings 1.00 (Musculoskeletal System), 3.00 (Respiratory System) and 4.00 (Cardiovascular System) (AR 15).

The ALJ decided at the fourth step that through the date last insured, plaintiff had the residual functional capacity (RFC) to perform a range of light work as defined in 20 C.F.R. § 404.1567(b):

> [P]laintiff can lift up to 20 pounds occasionally and 10 pounds frequently with the left upper extremity and up to 10 pounds occasionally and 5 pounds frequently with the right upper extremity. He cannot lift above the chest level. He is able to stand/walk up to 6 hours of an 8-hour workday and sit for at least 6 hours of an 8-hour workday. Work must be done in a relatively clean air environment free of dust, smoke, and fumes. Jobs should have consistent reading requirements of his past jobs.

(AR 15). The ALJ further found that through the date last insured, plaintiff was unable to perform any past relevant work (AR 18).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the national economy (AR 19). Specifically, plaintiff could perform the following jobs in the regional economy (Michigan): bakery worker (1,300 jobs); furniture rental clerk (3,500 jobs); and counter clerk (5,000 jobs) (AR 19). Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, at any time from November 1, 2006 (the alleged onset date) through December 31, 2009 (the date last insured) (AR 19-20).

### III. ANALYSIS

Plaintiff has raised two issues on appeal.

### A. Was there substantial evidence of the whole record to deny disability benefits?

The gist of plaintiff's argument is that the ALJ gave no rationale to support the conclusion that plaintiff lacked credibility with respect to his alleged limitations. Plaintiff's Brief at pp. 10-14. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high that, in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ made the following credibility determination:

> At the hearing, the claimant testified that he underwent back surgery in 1992, surgery for two stent placements in 1998, shoulder surgery in 2004, and additional surgery for stent placement in 2009. He continues to have pain in his right shoulder

and neck, as well as heart problems, asthma, and headaches. He said the headaches were due to stress. He takes naps during the day secondary to tiredness from the medications. Throughout school, he received special education services and currently he does not read books or newspapers and his wife took care of the checkbook. He has been separated from his wife for 2 1/2 years. He lost his home three weeks ago and now lives with his father. Regarding his daily chores, the claimant said he usually prepares peanut butter, toast, and eggs. His stepson does the laundry and when asked who cleans the house, he said the house does not get dirty. Claimant added that he did not take his heart medications and his mental medications so he could drive to the hearing today. Otherwise, he is lightheaded. He did not return to work following his shoulder surgery. He has no stamina or energy and cannot breathe with asthma. He also has pain in his back and cannot pick up anything or sit more than one hour. He spends his day playing internet poker and reading emails.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The claimant alleged disability due to heart problems, asthma, and right shoulder pain. He has undergone two heart surgeries with stent placements, with the last one in 2009, but follow-up reports show he has been doing well. An exercise stress test was normal. In fact, prior to his 2009 hospitalization, he had not been to a cardiologist in over 10 years. The claimant has a history of smoking cigarettes, and has been told to discontinue smoking, especially since he also has a history of asthma. Regarding the claimant's asthma, the claimant said he used on[e] inhaler per week on average and in December 2009, he said he had no issues with his lungs and his current medication regimen was working well. Chest x-rays performed in January 2010 showed no acute cardiopulmonary process and x-rays of the thoracic spine were unremarkable. The claimant also underwent surgery to his right shoulder in 2004 and there is very little objective evidence to show that he has continued to be treated for this.

(AR 17).

The ALJ's credibility determination is supported by substantial evidence. While plaintiff had suffered from coronary artery disease since 1998 (when a stent was placed) he had not seen a cardiologist for over a decade until suffering chest and back pain on October 5, 2009 (AR 16, 282, 287-89). He was successfully treated with a stent at that time (AR 16, 287-89). Progress notes

from January 14, 2010 (two weeks after plaintiff's last insured date) reflect that he suffered from back pain since his stent surgery in 2009 (AR 217).  He was discharged on October 7, 2009 with no complications (AR 325).

Plaintiff has a history of asthma and requested an inhaler from his primary care physician, Joseph Kozlowski, D.O., on September 14, 2009 (AR 16, 233).  Despite having asthma and requiring an inhaler, plaintiff's medical records reflect that he continued to smoke either 1/2 pack or 2 packs of cigarettes a day (AR 17, 233).  Plaintiff was given a prescription for Amanex and a recommendation to stop smoking (AR 17, 234).  By December 17, 2009, plaintiff said he had no issues regarding his lungs and that his current treatment regimen was working well (AR 17, 222). In an "asthma form" submitted to the agency in 2009, plaintiff noted that within the past year, he did not have an asthma attack requiring either an emergency room visit or hospitalization (AR 150). On January 15, 2010, a few weeks after plaintiff's last insured date, x-rays taken his chest revealed no acute cardiopulmonary process and x-rays of his thoracic spine were unremarkable (AR 17, 323-24).

Finally, plaintiff contends that he did not return to work after his neck and shoulder surgeries in 2004.  These surgeries occurred approximately two years before his alleged disability onset date of November 1, 2006.  Given this alleged onset date, it would appear that plaintiff did not consider himself disabled by those surgeries.

The ALJ has provided a rationale to support the credibility determination, having pointed out discrepancies between the plaintiff's claims and the medical evidence.  There is no compelling reason to disturb the ALJ's credibility determination.  *See Rogers*, 486 F.3d at 249; *Smith*, 307 F.3d at 379.  Accordingly, plaintiff's claim of error should be denied.

7

> **B.** **Did the ALJ err in failing to ask hypothetical questions based on the severe impairments found by the ALJ of severe pain, neck, asthma, heart issues [sic] that assumed the claimant's ability and persistence to be employed 5 days per week 8 hours per day week after week?**

Plaintiff contends that the hypothetical question posed to the vocational expert (VE) failed to address his daily headaches, daily napping, "the fact that he is always tired," that he was in special education, that he has a 5th grade reading ability, and that he has continued problems in his right shoulder and neck. Plaintiff's Brief at pp. 14-15. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Services.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals"). Because the purpose of the hypothetical question is to elicit testimony regarding a claimant's ability to perform other substantial gainful activity that exists in the national economy, the question does not need to include a listing of the claimant's medical diagnose. "[A] hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb*, 368 F.3d at 632.

The hypothetical question posed to the VE contained nearly identical restrictions as the RFC:

> Assume I find the claimant's residual functional capacity is such that he has a maximum sustained exertional work capacity to perform work which would allow him to lift 20 pounds occasionally and 10 pounds frequently with the left upper extremity, 10 pounds occasionally and 5 pounds frequently with the right upper extremity reaching only to chest high with the right upper extremity, able to stand and/or walk six hours out of an eight hour day, able to sit at least six hours out of an eight hour day. With the following restrictions, work is to be done in a relatively clean air environment, that's relative with only occasional exposure to dust, smoke and fumes, no repetitive bending, twisting or turning, no climbing, crawling or kneeling.

(AR 39). The ALJ's hypothetical question also included a non-exertional limitation that "these should be jobs that can be done within the intellectual capacity of someone who worked as a transmission mechanic" (AR 40). The VE testified that a person with these limitations could perform 9,800 jobs in the regional economy, such as bakery worker, counter clerk and furniture rental clerk (AR 41). The VE further testified that if plaintiff's testimony was fully credible with respect to his pain and discomfort, including blurred vision, lightheadedness, daily headaches, and daily naps), such limitations would "[i]mpact all competitive employment" (AR 42).

The ALJ's hypothetical question portrayed the claimant's physical and mental limitations which the ALJ found credible. With respect to the mental limitations, plaintiff testified that he worked as a transmission mechanic for about nine years (from 1995 through 2004) (AR 27). Given this work history, the ALJ could reasonably use the reading requirements of a transmission mechanic as a baseline for plaintiff's mental functioning (as opposed to plaintiff's claim that his reading ability limits his intellectual functioning to playing internet poker). As discussed in § II.A., the ALJ found plaintiff's claimed limitations not credible to the extent those limitations exceeded the RFC determination. Furthermore, the ALJ found that the assessments made by a non-examining

9

physician Donald H. Kuiper, M.D. of the Michigan Disability Determination Services were consistent with the ultimate finding that plaintiff was not disabled (AR 18, 315-22). In this regard, Dr. Kuiper found that plaintiff had nearly identical limitations as set forth in the RFC (AR 315-22). An ALJ may rely on the opinions expressed by state agency physicians (such as Dr. Kuiper) who reviewed plaintiff's file. *See* 20 C.F.R. § 404.1527(e)(2)(i) (the ALJ must consider the findings and other opinions of state agency medical consultants and other program physicians; these individuals are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation"). In summary, the ALJ could properly rely on the VE's testimony which identified 9,800 positions consistent with the limitations expressed in the RFC determination. *See Stanley*, 39 F.3d at 118; *Blacha*, 927 F.2d at 231. The ALJ's hypoethetical was not insufficient.

### IV.    Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.

Dated:  December 12, 2012                             /s/ Hugh W. Brenneman, Jr.
                                                     HUGH W. BRENNEMAN, JR.
                                                     United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).